IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAUNDA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN PIER & EXPOSITION | ) | |
| AUTHORITY, a municipal corporation, | ) | |
| CARLOS PONCE and GEORGE ROSEBROCK, | ) | |
| | ) | |
| Defendants. | ) | **JURY DEMAND** |

## COMPLAINT

Plaintiff, Shaunda Davis, as a Complaint against Defendants, the Metropolitan Pier & Exposition Authority ("MPEA"), Carlos Ponce, and George Rosebrock, alleges as follows:

**I.     NATURE OF THE CLAIM**

1.     This is an action brought to remedy race discrimination, sex discrimination and retaliation in employment and for violations of the Family and Medical Leave Act, the Electronic Communications Privacy Act, the Illinois Eavesdropping Act and Illinois common law.

2.     In November 2009, Plaintiff Shaunda Davis, who is African-American, managed all of the security systems at the Metropolitan Pier & Exposition Authority ("MPEA") and was the acting director of the entire Security Department. At that time, MPEA undertook a reduction in force (RIF) and Ms. Davis's direct supervisor, Carlos Ponce, instructed her to identify two Security Department employees for termination. While giving the instruction, Mr. Ponce handed her a list of Security Department employees that identified each employee's race and stated suggestively, "You have a lot of Blacks in your department."

3.      Ms. Davis ignored the suggestion and identified one white and one African-American employee for termination based upon the needs of the department. Mr. Ponce then instructed her to remove the white employee from the RIF list and stated that, if she did not, he would terminate an African-American administrative assistant as well. Plaintiff refused to comply with the instruction to engage in unlawful race discrimination and, consequently, a female African-American administrative assistant was terminated.

4.      Soon after these events, beginning in early February 2010, Mr. Ponce demoted Ms. Davis from her position as acting department head and subjected her to a series of other and ongoing retaliatory acts which included stripping her of every one of her previous job duties. He also treated her in a continually hostile manner, at one point suggesting that the reason she took a medical leave was to deal with a bunion when in fact she was on leave for surgery following a miscarriage.

5.      The retaliation continued unabated after the hiring of a new department director, George Rosebrock, in July 2010. In fact, Mr. Rosebrock was immediately provided with a memo about Ms. Davis that Mr. Ponce had ordered drafted for retaliatory purposes. In reliance upon the memo, Mr. Rosebrock continued to prevent Ms. Davis from performing her job.

6.      Moreover, Mr. Rosebrock also engaged in pervasive race and sex discrimination, making disparaging comments to Ms. Davis about being a "strong-willed woman," refusing to allow her to carry out the responsibilities of her position, purposely excluding her from intra- and inter-departmental communications, humiliating her in front of her colleagues, micro-managing her work and otherwise creating a hostile work environment based upon race and sex. This conduct continued until Ms. Davis resigned from the MPEA in October 2011.

7.      Finally, Ms. Davis is informed and has reason to believe that a secret camera was installed in the ceiling of her office and used to make illicit video and audio recordings of her in violation of federal and state eavesdropping statutes.

8.      Ms. Davis brings her claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq* ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981") (directly or pursuant to 42 U.S.C. §1983); the Equal Protection Clause (pursuant to 42 U.S.C. §1983); the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*; the Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq.*; the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*; the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.*; and Illinois common law for intentional infliction of emotional distress.

9.      Plaintiff seeks an award of back pay, front pay, compensatory damages, other equitable make whole relief and attorney's fees and costs.

## II.    JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), 42 U.S.C. §2000e-5(f)(3) (Title VII) and 28 U.S.C. §1343 (civil rights). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff has been at all times relevant herein a resident of this District and the acts that gave rise to the claims alleged in this Complaint occurred in this District.

## III.   EXHAUSTION OF ADMINISTRATIVE REQUIREMENT

12.     Plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

13.     On September 21, 2010, Ms. Davis filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") charging Defendant with discrimination based upon race, sex and retaliation. A true and accurate copy of Ms. Davis' EEOC charge is attached hereto as Exhibit 1.

14.     On September 23, 2011, Ms. Davis received notification of her right to sue from the EEOC. A true and accurate copy of the notice is attached hereto as Exhibit 2.`

15.     This lawsuit has been filed within 90 days of Ms. Davis's receipt of the notice of her rights from the EEOC.

## IV.  PARTIES

### A.     **Plaintiff**

16.     Plaintiff is an African-American female. She is and was at all times relevant herein a resident of the City of Chicago, County of Cook, State of Illinois, in this District.

### B.     **Defendants**

17.     Defendant MPEA is and was at all times relevant herein a municipal corporation organized and existing under the laws of the State of Illinois. MPEA is and was at all times relevant herein an employer as defined by Title VII and the Illinois Human Rights Act.

18.     At all times relevant until his resignation in 2010, Defendant Carlos Ponce was the chief of staff to Juan Ochoa, the chief executive officer of the MPEA. Mr. Ponce was Ms. Davis's direct supervisor.  He is being sued under 42 U.S.C. §1981 (either directly or pursuant to the "and laws" provision of 42 U.S.C. §1983), the Equal Protection Clause (pursuant to 42 U.S.C. §1983) and for intentional infliction of emotional distress under Illinois law. On

information and belief, Mr. Ponce is a resident of the City of Chicago, County of Cook, State of Illinois, in this District.

19. Defendant George Rosebrock was the senior director of security and safety at the MPEA and Plaintiff's direct supervisor beginning in July 2010 and continuing through the end of her employment. He is being sued under 42 U.S.C. §1981 (either directly or pursuant to the "and laws" provision of 42 U.S.C. §1983), the Equal Protection Clause (pursuant to 42 U.S.C. §1983) and for intentional infliction of emotional distress under Illinois law. On information and belief, Mr. Rosebrock is a resident of the City of Chicago, County of Cook, State of Illinois, in this District.

## V.    FACTS MATERIAL TO PLAINTIFF'S CLAIMS

20. In October 2005, the MPEA hired Ms. Davis as an assistant construction manager. She holds a bachelor of science degree in electrical engineering from the University of Illinois. When MPEA hired her, she had eleven  years of work experience in her field, including as a lead software engineer at Lucent Technologies and senior software design engineer at Motorola.

21. In May 2007, MPEA promoted Ms. Davis to assistant director of security systems in the Department of Safety and Security. She received a substantial pay increase.

22. Ms. Davis was the only female assistant director in the department.

23. Ms. Davis's position involved significant and critical responsibilities administering, maintaining and managing MPEA's security systems. Among many other responsibilities, Ms. Davis ran command center operations for McCormick Place and Navy Pier.

5

24.     As assistant director of security systems, Ms. Davis directly supervised multiple employees and had many others who were available to her in a supporting role.

25.     In September 2009, the senior department director resigned and Ms. Davis was promoted to acting senior director of security and safety. She received a substantial pay increase and undertook additional supervisory and management responsibilities as department director. Carlos Ponce, the chief of staff to Juan Ochoa, MPEA's chief executive officer, advised Plaintiff that she would remain in the acting director position until a permanent senior director was hired.

26.     Thereafter, from September 2009 until on or around February 4, 2010, Ms. Davis performed the job of acting senior director of safety and security while also carrying out all of the responsibilities of her previous position, assistant director of security systems.

27.     As acting senior director, Ms. Davis reported directly to Mr. Ponce.

28.     In November 2009, MPEA undertook the first in series of RIFs. In a face-to-face meeting, Mr. Ponce instructed Ms. Davis to identify two security department employees whose jobs would be eliminated in the RIF. At the same time, he handed her a list entitled "departmental headcount" that identified employees by name, race and other attributes to use in determining who should be terminated in the RIF. In handing Ms. Davis the list, Mr. Ponce stated suggestively, "You have a lot of Blacks in your department."

29.     Plaintiff ignored Mr. Ponce's suggestive remark and identified two employees in her department for termination in the RIF based upon the needs of the department and the welfare of the MPEA. She did not consider race or any other unlawful criteria in deciding who would be terminated. After making her decision, Ms. Davis sent Mr. Ponce an e-mail with the names of the two employees, one white and one African-American.

6

30. After being informed of the identity of the two employees selected by Ms. Davis, Mr. Ponce requested that Ms. Davis meet with him. At the face-to-face meeting, he instructed her to remove the white employee from the list and further stated that if she did not remove him, she would lose three employees from her department instead of two and that the additional employee would be an administrative assistant, all of whom were African-American females.

31. Ms. Davis refused to comply with the instruction to unselect the white male. Consequently, she was forced to select an African-American administrative assistant for termination in the RIF and three employees in her department instead of two were terminated. Thus began a series of continuing retaliatory actions against Ms. Davis for refusing to make termination decisions based upon race.

32. In early December 2010, within weeks of Ms. Davis's refusal to engage in unlawful race discrimination, Mr. Ponce met with Mr. Ocha (MPEA's chief executive officer). On information and belief, at that meeting, they made a decision to demote Plaintiff.

33. On or around February 4, 2010, Mr. Ponce demoted Plaintiff from her position as acting senior director.

34. As a consequence of the demotion, Ms. Davis suffered an immediate, substantial reduction in pay and responsibilities.

35. At the time of Ms. Davis's promotion in September 2009, Mr. Ponce had promised that when a permanent senior director was hired and Ms. Davis returned to the assistant director position, she would receive an increase in her previous salary. Earlier, a white male colleague who had been similarly promoted to an acting position did receive such a pay increase after being returned to his previous job. However, unlike the white male colleague,

7

when Ms. Davis was first returned to the assistant director position she was reduced to her original salary with no pay increase.

36.     Ms. Davis' demotion was an adverse employment action.

37.     Furthermore, the action was taken in retaliation for her refusal to participate in unlawful race discrimination. The action also reflected race and sex discrimination because Ms. Davis was not treated in the same manner as a similarly situated white male colleague.

38.     Before she refused to cooperate in unlawful race discrimination, Ms. Davis was promoted to acting department director and told that she would remain in that position until a permanent senior director was hired. After Ms. Davis refused to cooperate in unlawful race discrimination by unselecting a white employee for the RIF, she was removed from the acting senior director position even though no permanent director was hired. In fact, the senior director position remained empty for five months following Ms. Davis's demotion.

39.     The same day that Mr. Ponce demoted Ms. Davis, he instructed the chief operating officer of the Information Services (IS) Department to conduct a secret "analysis" of MPEA's security systems. The "analysis" was launched for retaliatory reasons and was conducted without Plaintiff's knowledge.

40.     The IS "analysis" culminated in a memo dated April 14, 2010 which purported to document various "issues" with MPEA's security systems. Among other criticisms, the memo complained that Ms. Davis—the director of security systems—"would allow access to [MPEA's security systems] only upon her approval." In other words, the memo complained that Ms. Davis's security procedures were too tight.

8

41.     Mr. Ponce never showed Ms. Davis the memo. She discovered its existence months later, after he had left the MPEA. Nonetheless, he relied upon the secret "analysis" of MPEA's security systems conducted by the IS department for retaliatory reasons as a (silent) pretext for stripping Plaintiff of all of her work responsibilities.

42.     In February 2010, while the secret "analysis" was underway, Ms. Davis suffered a miscarriage. She needed medical treatment including a surgical procedure. She then suffered a herniated disk. Consequently, she took a medical leave protected by the Family and Medical Leave Act and remained on leave until the end of March 2010.

43.     Thus, since the IS department's secret "analysis" of security systems was conducted between February 4, 2010 and April 14, 2010, Ms. Davis—the director of security systems—was not even at work during the large majority of the IS review. Also, Mr. Ponce had purposely failed to inform Ms. Davis that such a review was taking place or to articulate to her any legitimate reason to provide IS department employees with access to MPEA's security systems. Yet the memo criticized Ms. Davis for failing to provide IS department employees with "system IDs and passwords"—for an "analysis" she did not know was taking place.

44.     While Plaintiff was out on medical leave, Mr. Ponce continued to treat her with hostility and disrespect. He questioned the basis for her medical leave, stating that, for all he knew, she was off of work for a "bunion" when in fact she had suffered a miscarriage and needed surgery.

45.     Moreover, during her medical leave, Mr. Ponce repeatedly called Ms. Davis at home and sent e-mail demanding her attention to work matters even though she had a trained and qualified assistant on site to manage the security systems in her absence.

9

46.     Mr. Ponce's directives continued even after Ms. Davis shared highly personal information about the reason for her medical leave. In one instance, he sent Ms. Davis an e-mail at 3:00 p.m. on a Friday insisting that she take immediate action "even if it means this weekend." This directive arrived the same week Ms. Davis learned she would need surgery following her miscarriage. Mr. Ponce copied other employees on this highly critical e-mail, disclosing Ms. Davis's confidential medical information.

47.     When Ms. Davis returned to work, she discovered that Mr. Ponce had reassigned her staff and redistributed all of her responsibilities to other employees. Thus, she was stripped of all of her previous responsibilities as assistant director of security systems.

48.     Mr. Ponce also instructed Plaintiff to report to a male assistant director who was her equal in rank and whom she had supervised as acting senior director.

49.     Further, Mr. Ponce directed that Plaintiff be locked out of MPEA's security systems. Thus, without access to the security systems, it was impossible for Ms. Davis to perform her job of assistant director of security systems.

50.     Because she was stripped of all responsibilities and was locked out of the security systems, Ms. Davis reported to work daily and sat in her office with no work to perform.

51.     Thus, in retaliation for her refusal to participate in race discrimination, Ms. Davis was stripped of all of her responsibilities as assistant director of security systems. To the extent that Mr. Ponce's decisions and directives were based upon perceived performance deficits, his actions were also motivated by race and sex discrimination and retaliation for the exercise of rights protected by the Family and Medical Leave Act (FMLA).

52.     On March 29, 2010, Ms. Davis filed an internal complaint alleging race discrimination, retaliation and violation of her FMLA rights. On March 31, 2010, she amended the complaint to include additional acts of discrimination and retaliation.

53.     MPEA hired outside counsel to investigate Ms. Davis's complaint. On May 17, 2010, Ms. Davis received a call from one of the investigators who stated that they were wrapping up the investigation and that the report would be completed that day.

54.     Ms. Davis was promised repeatedly that the investigators would meet with her to discuss the results of the investigation and the contents of their final report. However weeks passed after the report was completed with no such meeting.

55.     It was suggested to Plaintiff that the MPEA was delaying the meeting until after Mr. Ponce left the MPEA. Mr. Ponce did not leave until the end of June 2010. Thus, Ms. Davis continued to sit in her office, stripped of all work duties.

56.     MPEA was on notice of the violation of Plaintiff's rights and, specifically, that she had been stripped of all responsibilities and was reporting to work to sit in her office. In July 2010, Renee Benjamin, MPEA's general counsel, informed Ms. Davis that the investigators' report recognized that MPEA had a duty to return her to her job duties and responsibilities. Ms. Benjamin asked what Ms. Davis had been doing for all the time since her return from medical leave and Ms. Davis told her that she had been just sitting in her office doing administrative work.

57.     On or around July 5 2010, MPEA hired George Rosebrock, a white male, as senior director of security and safety.

11

58.     Immediately upon his assumption of the senior director job, Mr. Rosebrock was provided a copy of the April 14, 2010 memo from the director of IS to Mr. Ponce. Thus, animated by a retaliatory memo and, on information and belief, additional information communicated by employees whose motivations were unlawful, Mr. Rosebrock immediately and without interruption perpetrated the retaliation and discrimination against Ms. Davis. Specifically, after promising to meet with Ms. Davis "in the very near future" to discuss her "area of responsibility," Mr. Rosebrock then repeatedly rebuffed her efforts to schedule the meeting. He also took additional actions reflecting that he did not consider her to be equal in stature to the other (male) assistant directors. For example, he sent an e-mail to security department employees but did not include either Ms. Davis or her support staff employee on the e-mail. He also held a staff meeting and allowed the three other (male) assistant department directors to sit on the podium while Ms. Davis was left in the audience—an act that was deeply humiliating given that Ms. Davis had previously directed the entire department and supervised all of the department's employees.

59.     When Mr. Rosebrock finally met with Plaintiff to discuss her job, he told her, in words or substance, "I've talked to a lot of people about you" and that it has "been said" that "you are difficult." In addition, he finally disclosed to her the April 14, 2010 memo and demanded that she respond to the accusations in writing.

60.     As directed, Plaintiff responded in writing to the accusations of the April 14, 2010 memo and did so in great detail. In her response, Ms. Davis addressed the substance of the accusations and also described her belief that the memo was created as a pretext for retaliation.

12

61.     Mr. Rosebrock promised to meet with Plaintiff to discuss her written response. However, despite Plaintiff's repeated efforts to schedule the meeting, he never met with her to discuss the accusations in the memo or Ms. Davis's response.

62.     He did, however, continue to actively prevent Ms. Davis from performing her job. On several occasions when she pointed out that certain tasks were within her assigned job duties, he stated, in sum or substance, that she had no job description other than what he determined.

63.     Continuing through the end of her employment, Mr. Rosebrock perpetuated the unlawful retaliation and created a hostile work environment based on race and sex. In addition to actively preventing her from carrying out the responsibilities of her position, he micro-managed her work and required that she secure his approval on matters over which she had previously exercised independent judgment. Further, he excluded her from intra- and inter-departmental communications concerning matters within the scope of her duties, permitted employees previously supervised by her to engage in acts of insubordination, and otherwise treated her with hostility and disprespect.

64.     Mr. Rosebrock's hostility was reflected in pejorative remarks bemoaning "strong-willed" women.  On one occasion, he told Ms. Davis that she was "strong-willed" and that women do not "need" to be "strong-willed."

65.     Mr. Rosebrock did not make similarly hostile comments about male supervisors.

66.     Mr. Rosebrock intentionally assigned work so that male employees did not need to report to Ms. Davis. He repeatedly praised male employees for carrying out even relatively trivial tasks as directed while ignoring Ms. Davis's efforts even when they were so exemplary that MPEA's clients lauded her work. Likewise, when Ms. Davis reported errors made by male

13

employees conducting work on the security systems, Mr. Rosebrock would not even acknowledge their mistakes.

67.  The discrimination and retaliation continued through the end of Ms. Davis's employment in October 2011.

68.  Upon information and belief, at some point during the period February 4, 2010 and June 2010, and possibly during Ms. Davis's medical leave, MPEA installed an audio and video recording device in the ceiling of her office and used it to record, among other things, statements that Ms. Davis made over her private cellular telephone. Ms. Davis learned of the device after Mr. Rosebrock was hired in July 2010 when, among other things, she observed an electrician doing something in her ceiling and was then informed by Mr. Rosebrock that some unnamed employee had been recorded through a secret camera in a ceiling.

69.  In October 2011, after securing a job in her field with a Fortune 100 company, Ms. Davis resigned from the MPEA.

70.  As a consequence of MPEA's unlawful conduct, Ms. Davis suffered damages including a substantial reduction in pay and work responsibilities and severe mental anguish, humiliation and other emotional distress.

## VI.  CLAIMS FOR RELIEF (All Counts Stated Against MPEA; Certain Counts Stated Against Defendants Ponce and/or Rosebrock, as Indicated)

### COUNT I
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e
### (Retaliation)

71.  Plaintiff incorporates by reference the preceding paragraphs as alleged above.

72.  Plaintiff engaged in the protected activities of refusing to participate in unlawful race discrimination and by filing internal discrimination and retaliation complaints.

14

73. MPEA violated 42 U.S.C. §2000e *et seq.* by taking adverse employment action against Plaintiff in retaliation for her protected activities.

74. MPEA's conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under Title VII.

## COUNT II
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e
### (Race and Sex Discrimination)
### (Adverse Employment Action)

75. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

76. Through its actions described above, MPEA took adverse employment action against Plaintiff based upon her race and sex in violation of 42 U.S.C. §2000e *et seq.*

77. MPEA's conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under Title VII.

## COUNT III
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e
### (Race and Sex Discrimination)
### (Hostile Environment)

78. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

79. Through its actions described above, MPEA violated 42 U.S.C. §2000e et seq. by creating a hostile work environment against Plaintiff based upon her race and sex.

80. MPEA's conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under Title VII.

## COUNT IV – AGAINST ALL DEFENDANTS
### 42 U.S.C. §1981, Either Directly or Under the "And Laws" Provision of 42 U.S.C. §1983
### (Retaliation)

81. Plaintiff incorporates by reference the preceding paragraphs as alleged above.

82.     Plaintiff engaged in the protected activities of refusing to participate in unlawful race discrimination and of filing an internal discrimination complaint.

83.     Defendants violated 42 U.S.C. §1981 by taking adverse employment actions against Plaintiff in retaliation for her refusal to participate in unlawful race discrimination, a protected activity.

84.     Defendants acted under color of state law in violating Plaintiff's rights protected by 42 U.S.C. §1981.

**COUNT V – AGAINST ALL DEFENDANTS**
**42 U.S.C. §1981, Either Directly or Under the "And Laws" Provision of 42 U.S.C. §1983**
**Equal Protection Clause, Pursuant to 42 U.S.C. §1983**
**(Race and Sex Discrimination)**
**(Adverse Employment Action)**

85.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

86.     Plaintiff and MPEA entered into a contract of employment.

87.     Through their actions described above, Defendants took adverse employment action against Plaintiff based upon her race and sex in violation of 42 U.S.C. §1981 (race) and the Equal Protection Clause (race and sex).

88.     In violating Plaintiff's rights, Defendants acted under color of law.

89.     Defendants' conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under 42 U.S.C. §1981 and the Equal Protection Clause.

**COUNT VI – AGAINST DEFENDANTS MPEA AND ROSEBROCK**
**42 U.S.C. §1981, Either Directly or Under the "And Laws" Provision of 42 U.S.C. §1983**
**Equal Protection Clause, Pursuant to 42 U.S.C. §1983**
**(Race and Sex Discrimination)**
**(Hostile Environment)**

90.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

16

91.     Plaintiff and MPEA entered into a contract of employment.

92.     Through their actions described above, Defendants created a hostile work environment against Plaintiff based upon her race and sex in violation of 42 U.S.C. §1981 (race) and the Equal Protection Clause (race and sex).

93.     In violating Plaintiff's rights, Defendants acted under color of law.

94.     Defendants' conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under 42 U.S.C. §1981 and the Equal Protection Clause.

**COUNT VII**
**Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.**
**(Retaliation)**

95.     Plaintiff incorporates by reference the preceding paragraphs as alleged above. Plaintiff engaged in the protected activities of refusing to participate in unlawful race discrimination and filing an internal discrimination complaint.

96.     MPEA violated 775 ILCS 5/1-101 *et seq.* by taking adverse employment action against Plaintiff in retaliation for her protected activities.

97.     MPEA's conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under the Illinois Human Rights Act.

**COUNT VIII**
**Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.**
**(Race and Sex Discrimination)**
**(Adverse Employment Action)**

98.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

99.     Through its actions described above, MPEA took adverse employment action against Plaintiff based upon her race and sex in violation of 775 ILCS 5/1-101 *et seq.*

17

100.     MPEA's conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under the Illinois Human Rights Act.

**COUNT IX**
**Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.**
**(Race and Sex Discrimination)**
**(Hostile Environment)**

101.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

102.     Through its actions described above, MPEA violated 775 ILCS 5/1-101 et seq. by creating a hostile work environment against Plaintiff based upon her race and sex.

103.     MPEA's conduct was intentional, deliberate, willful and conducted with reckless disregard of Plaintiff's rights under the Illinois Human Rights Act.

**COUNT X**
**Family and Medical Leave Act, 29 U.S.C. §2601 et seq.**
**(Interference)**

104.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

105.     Plaintiff was at all relevant times an "eligible employee" under the Family and Medical Leave Act (FMLA).

106.     During February and March 2010, Plaintiff had a "serious health condition" entitling her to FMLA leave.

107.     MPEA was on notice of Plaintiff's serious health condition and her entitlement to and intent to take FMLA leave.

108.     Through its actions described above, MPEA failed and refused to restore Plaintiff to her job duties as assistant director of security systems after her return from FMLA leave in violation of 29 U.S.C. §2614(a)(1).

18

109.     Through its actions described above, MPEA interfered with, restrained and denied Plaintiff the exercise of her rights under the FMLA in violation of 29 U.S.C. §2615.

## COUNT XI
### Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511 *et seq*.
### (Interception and Disclosure of Oral Communication)

110.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

111.     Through its actions described above, and upon information and belief, MPEA intentionally intercepted, endeavored to intercept or procured another person to intercept Plaintiff's oral communication.

112.     Through its actions described above, and upon information and belief, MPEA intentionally disclosed or endeavored to disclose the contents of Plaintiff's oral communication knowing or having reason to know that the information was obtained through the interception of an oral communication in violation of 18 U.S.C. §2511 et seq.

113.     Plaintiff did not consent to the interception or disclosure of her oral communication.

114.     MPEA's actions were intentional, willful and taken in reckless disregard of Plaintiff's rights under the Electronic Communications Privacy Act (ECPA).

## COUNT XII
### Illinois Eavesdropping Act, 720 ILCS 5/14-2

115.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

116.     Upon information and belief, MPEA knowingly and intentionally used an eavesdropping device for the purpose of hearing or recording all or any part of any conversation to which Plaintiff was a party without her consent.

117.    Upon information and belief, MPEA knowingly and intentionally intercepted, retained or transcribed Plaintiff's electronic communication without her consent.

### COUNT XIII – AGAINST ALL DEFENDANTS
### Intentional Infliction of Emotional Distress

118.    Plaintiff incorporates by reference the preceding paragraphs as alleged above.

119.    Through their actions described above, Defendants engaged in extreme and outrageous conduct toward Plaintiff that was intended to and did cause her severe emotional distress.

120.    When Defendants engaged in extreme and outrageous conduct toward Plaintiff, they were aware of her susceptibility to emotional distress.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A.    A declaratory judgment that the practices complained of herein were unlawful and violated Title VII of the Civil Rights Act, 42 U.S.C. §1981, 42 U.S.C. §1983, the Equal Protection Clause, the Family and Medical Leave Act, the Illinois Human Rights Act (IHRA), the Electronic Communications Privacy Act (ECPA), the Illinois Eavesdropping Act and Illinois common law;

B.    A preliminary and permanent injunction against the MPEA and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them from engaging in the unlawful policies, practices, customs and usages set forth herein;

C.    An order awarding Plaintiff back pay (including interest and benefits);

D.    An order awarding Plaintiff additional compensatory and punitive damages;

E.      An order awarding Plaintiff actual or statutory damages in the amount of $10,000

or $100 a day for each day of Defendant's violation of the ECPA, whichever is greater;

F.      An order awarding Plaintiff her reasonable attorney's fees and litigation costs as

provided for under Title VII, 42 U.S.C. §1981, the FMLA, the IHRA and the EPCA;

G.      An order awarding Plaintiff pre-judgment and post-judgment interest, as provided

by law; and

H.      Such other and further legal and equitable relief as this Court deems necessary,

just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: December 20, 2011                              Respectfully submitted,

                                                      /s/ Marni Willenson
                                                      WILLENSON LAW, LLC
                                                      542 S. Dearborn St., Suite 610
                                                      Chicago, IL 60605
                                                      (312) 546-4910
                                                      (312) 261-9977 Fax
                                                      marni@willensonlaw.com

                                                      Attorney for Plaintiff