IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUNDA DAVIS,  )<br>Plaintiff,  )<br>v.  )<br>  )  11 C 9018<br>  )<br>METROPOLITAN PIER & EXPOSITION  )  Judge Virginia M. Kendall<br>AUTHORITY, a municipal corporation,  )<br>CARLOS PONCE and GEORGE  )<br>ROSEBROCK,  )<br>Defendants.  ) | |

**MEMORANDUM OPINION AND ORDER**

Shaunda Davis brings suit against her former employer, the Metropolitan Pier &

Exposition Authority ("the MPEA"), and two of its employees, Carlos Ponce and George

Rosenbrock.  Davis alleges that the MPEA retaliated against her in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Count I); discriminated against her

on the basis of race and sex in violation of Title VII (Count II); created a hostile work

environment on the basis of race and sex in violation of Title VII (Count III); retaliated

against her in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, (Count

VII); took adverse employment action against her on the basis of race and sex in violation

of the Illinois Human Rights Act (Count VIII); created a hostile work environment on the

basis of race and sex in violation of the Illinois Human Rights Act (Count IX); illegally

interfered with her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, (Count X); illegally intercepted and disclosed oral communications in violation of the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511 *et seq.*, (Count XI); and engaged in illegal eavesdropping in violation of the Illinois Eavesdropping Act, 720 ILCS 5/14-2 (Count XII). As against the MPEA, Carlos Ponce, and George Rosenbrock she alleges claims for retaliation in violation of 42 U.S.C. § 1981 or 42 U.S.C. § 1983 (Count IV); adverse employment action on the basis of race and sex discrimination in violation of § 1981 or § 1983 (Count V); hostile work environment on the basis of race and sex in violation of § 1981 or § 1983 (Count VI); and intentional infliction of emotional distress under Illinois common law(Count XIII). Davis seeks both compensatory and punitive damages for the allegedly wrongful acts of the Defendants. Before the Court is the Defendants' Motion to Dismiss Davis's Complaint. For the reasons stated below, the Defendants' Motion to Dismiss is granted in part and denied in part.

## I.  Background

In deciding the instant Motion, the Court assumes the veracity of the well-pleaded allegations in the Complaint and construes all reasonable inferences in Davis's favor. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). Shaunda Davis was hired by the MPEA as an Assistant Construction Manager in October 2005. In May 2007, the MPEA promoted Davis to

Assistant Director of Security Systems in the Department of Safety and Security. Upon her promotion, Davis received a substantial pay increase. Davis was the only female assistant director in the Department. As Assistant Director of Security Systems, Davis directly supervised a number of employees.

In September 2009, the Senior Department Director resigned. Davis was promoted to Acting Senior Director of Safety and Security. Upon her promotion, Davis undertook additional responsibilities for which she received a substantial pay increase. Carlos Ponce, the chief of staff to Juan Ochoa, the MPEA's CEO, told Davis that she would remain as Acting Director until a permanent senior director was hired. At the time of her promotion, Ponce promised Davis an increase in her prior salary when she returned to the Assistant Director position. From September 2009 through February 4, 2010, Davis performed both the duties of her prior position as well as the duties of Acting Senior Director of Safety and Security. As acting director, Davis reported directly to Ponce.

In November 2009, the MPEA undertook the first in a series of reductions in force initiatives ("RIFs"). In a face-to-face meeting with Davis, Ponce directed her to identify two security department employees to be terminated in the RIF. At this meeting, Ponce handed Davis a list entitled "department headcount," which identified employees by name, race, and other attributes. In handing Davis the list, Ponce remarked, "You have a lot of Blacks in your department." Davis took this remark as an overt suggestion that she terminate

only Black employees. Notwithstanding Ponce's remark, Davis identified two employees in the department for termination in the RIF based solely upon the needs of the department and the welfare of the MPEA. Davis asserts that she did not consider race or any other unlawful criteria in determining whom to fire. Davis sent Ponce an e-mail with the names of the two employees; one was Caucasian, the other Black.

After learning of the identities of the two employees Davis identified for termination, Ponce requested that Davis meet with him. At this meeting Ponce instructed Davis to remove the Caucasian employee from the list. He told Davis that if she did not remove the Caucasian employee that Davis would lose three employees from within her department instead of two. Ponce stated that the third employee would be an administrative assistant, all of whom were Black females. Davis refused to unselect the Caucasian employee for termination. As a result, she was forced to additionally select a Black administrative assistant for termination in the RIF.

Davis alleges that her decision not to unselect the Caucasian employee for termination commenced a series of continuing retaliatory actions against her. In early December 2010, within weeks of Davis's refusal to engage in what she alleges was unlawful race discrimination, Ponce met with Ocha. Davis alleges that at this meeting a decision was made to demote her. On February 4, 2010, Ponce demoted Davis from her position as Acting Senior Director. As a result, Davis suffered an immediate, substantial reduction in

pay and responsibilities. Notwithstanding Ponce's promise to increase Davis's salary when she returned to the position of Assistant Director, when she first returned to that position her salary was reduced to the original amount without any increase. Earlier, a Caucasian male colleague who had been similarly promoted to an acting position received a pay increase after being returned to his previous job.

On the same day that Ponce demoted Davis, he instructed the chief operating officer of the Information Systems Department to conduct a secret "analysis" of the MPEA's security system. The "analysis" concluded in a memorandum dated April 14, 2010. The memorandum purported to document various "issues" with the MPEA's security systems. In essence, the memorandum concluded that Davis's security procedures were too tight. Ponce never disclosed the memorandum to Davis; she learned of its existence after Ponce left the MPEA.

In February 2010, while the Information Systems Department "analysis" was being conducted, Davis suffered a miscarriage. As a result, she required medical attention as well as a surgical procedure. Davis then suffered a herniated disk. Due to these conditions, Davis took medical leave pursuant to the Family and Medical Leave Act ("FMLA"). Davis remained on leave until the end of March 2010. While Davis was on leave, Ponce questioned the basis for her leave. Furthermore, during her leave Ponce repeatedly called Davis at home and sent her e-mail demanding her attention to work matters, despite the

fact that she had a trained and qualified assistant on site to manage the security system in her absence.

Davis shared her highly personal reason for taking medical leave with Ponce. Nevertheless he continued to issue directives to her. In one instance, Ponce sent Davis an e-mail at 3:00 p.m. on a Friday, insisting that she take immediate action, even if it meant over the weekend. Davis received this e-mail the same week that she learned she would need surgery following her miscarriage. Ponce copied other employees on this e-mail, thus disclosing Davis's personal medical information to others within the MPEA.

When Davis returned to work, she discovered that Ponce had reassigned her staff and redistributed all of her responsibilities to other employees. Davis was therefore stripped of all of her previous responsibilities as Assistant Director of Security Systems. Ponce also instructed Davis to report to a male assistant director who was her equal in rank and whom she had supervised as Acting Senior Director. Furthermore, Ponce directed that Davis be locked out of the MPEA's security systems, thus making it impossible for her to perform her job. As a result, Davis reported to work on a daily basis and sat in her office with no work to perform.

On March 29, 2010, Davis filed an internal complaint alleging race discrimination, retaliation, and violations of her FMLA rights. Two days later she amended the complaint to include additional acts of discrimination and retaliation. The MPEA hired outside

counsel to investigate Davis's complaint. On May 17, 2010, Davis received a call from one of the investigators, who stated that they were wrapping up the investigation and that the report would be completed that day. Davis was repeatedly promised that the investigators would meet with her to discuss the results of their investigation and the contents of their final report. However, weeks passed after the report was completed and no meeting took place. Davis alleges that is was suggested to her that the MPEA was delaying the meeting until after Ponce left the MPEA.

In July 2010, Renee Benjamin, the MPEA's general counsel, informed Davis that the investigators' report recognized that the MPEA had a duty to return her to her job duties and responsibilities. On or around July 5, 2010, the MPEA hired George Rosebrock, a Caucasian male, as Senior Director of Security and Safety. Upon assuming the job of Senior Director, Rosebrock was provided a copy of the Information Systems memorandum. Davis alleges that Rosebrock learned of additional information about her from other employees whose motivations were unlawful. Therefore, Davis alleges that Rosebrock immediately and without interruption perpetuated retaliation and discrimination against her.

After promising to meet with Davis "in the very near future" to discuss her "area of responsibility," Rosebrock then repeatedly rebuffed Davis's efforts to schedule the meeting. Davis alleges that Rosebrock took additional actions reflecting the fact that he did not consider her to be equal in stature to other, male, assistant directors. For example,

Rosebrock sent an e-mail to security department employees but did not include Davis or her support staff on the e-mail. He also held a staff meeting and allowed the three other male Assistant Department Directors to sit on the dais, while Davis was left in the audience. Davis claims that this was deeply humiliating given the fact that she had previously directed the entire department and supervised all of the department's employees.

When Rosebrock finally met with Davis he told her that he had talked to a lot of people about her and that he had heard that she was difficult. He also disclosed the Information Systems memorandum to her and demanded that she respond to the allegations contained in it in writing. As directed, Davis responded to the memorandum in writing in great detail. She addressed the substantive accusations and also described her belief that the memorandum was generated as a pretext for retaliation. Despite promising to meet with Davis to discuss her response to the memorandum, Rosebrock never met with her notwithstanding Davis's repeated efforts to schedule the meeting. He did, however, continue to prevent Davis from being able to perform her job.

On several occasions Davis pointed out that certain tasks were within her assigned job duties. Rosebrock responded that Davis's job duties were whatever he said they were and that she had no other job duties than what he determined. Continuing through the end of her employment with the MPEA, Davis alleges that Rosebrock perpetuated the unlawful retaliation against Davis and created a hostile work environment based on sex and race.

Overall, Davis alleges that Rosebrock treated her with a disrespect and hostility that he did not exhibit to other employees. This hostility was reflected in his remarks bemoaning "strong-willed women." On one occasion, Rosebrock told Davis that she was "strong-willed" and that women do not "need" to be "strong-willed." Davis alleges that Rosebrock did not make similarly hostile remarks about male supervisors. Rosebrock assigned work so that male employees did not have to report to Davis.

Upon Davis's information and belief, at some point during the period from February 4, 2010 and June 2010, and possibly during Davis's medical leave, the MPEA installed an audio and video recording device in the ceiling of her office. Davis alleges that the MPEA used the equipment to record, among other things, statements that Davis made over her private cellular telephone. Davis learned of the device after Rosebrock was hired in July 2010 when, among other things, she observed an electrician doing something in her ceiling and was then informed by Rosebrock that some unnamed employee had been recorded through a secret camera in a ceiling. In October 2011, after securing another job in her field at a different firm, Davis resigned from the MPEA.

On September 21, 2010, Davis filed a Charge of Discrimination with the EEOC alleging that the Defendants took adverse employment action against her on the basis of race and sex, as well as retaliated against her. On September 23, 2011, Davis received a Right to Sue Letter from the EEOC. Davis commenced this action on December 20, 2011.

## II. The Standard of Review

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all the well-pleaded facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are well-pleaded, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *See Id.* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678.

## III. Discussion

The Defendants move to dismiss Davis's Complaint on three grounds. First, the Defendants claim that all of the Counts in Davis's Complaint fail to give rise to a plausible

entitlement to relief under Rule 8 of the Federal Rules of Civil Procedure as interpreted by the Supreme Court in *Twombly* and *Iqbal*. Second, they contend that Counts I, II, and III of the Complaint are time-barred. Third, the Defendants argue that Davis's request for punitive damages should be stricken because punitive damages are not recoverable against the MPEA, a governmental entity.

### i. The Sufficiency of the Pleadings Under Rule 8 of the Federal Rules of Civil Procedure

The Defendants argue that Davis fails to adequately plead facts sufficient to support her claims for an entitlement to relief as to all of the Counts in her Complaint. Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A cause of action will be dismissed for failure to state a claim "only when the allegations in the complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. As is discussed above, under *Twombly* and *Iqbal* the plaintiff must state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678. A claim has facial plausibly when the plaintiff pleads enough factual allegations so that the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* The plausibility requirement of Rule 8 mandates that the plaintiff plead enough facts to give rise to a right to relief that is more than speculative or a "mere possibility." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at

555. The plausibility requirement "does not imply that…the court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, in order to survive the motion to dismiss under *Twombly* and *Iqbal*, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

Under the federal notice pleading standards governing Rule 8(a)(2), a plaintiff does not have to allege facts corresponding to each element of a cause of action. "Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of." *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). However, "courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Seventh Circuit has cautioned that in holding that a complaint is deficient for any reason, courts must first ascertain "[w]hat rule of law *requires* a complaint to contain that allegation." *Id.* (emphasis in original). Some causes of action are governed by heightened pleading standards, such as allegation of fraud, which Rule 9(b) of the Federal Rules of Civil Procedure requires be pleaded with particularity. However, in this case no rule of law requires that Davis's Complaint contain anything beyond a plausible entitlement to relief

under the liberal notice pleading standards of Rule 8(a)(2).

Contrary to the Defendants' argument that Davis merely recites the elements of each of her causes of action without pleading sufficient facts to support them, Davis's Complaint is loaded with factual allegations. As Davis points out, what the Defendants really challenge in many of their arguments is the Complaint's *organization*, rather than the sufficiency of its factual allegations. The Defendants appear to disregard the Complaint's 51 paragraphs of factual allegations which precede Davis's "Claims for Relief." What the Defendants ignore is that each Count of Davis's Claims for Relief expressly incorporates the Complaint's factual allegations. The Federal Rules of Civil Procedure explicitly provide for this type of pleading by incorporation. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading.").

### A. Title VII Claims

The Defendants argue in their Motion to Dismiss that Davis's Complaint "provides a mere formulaic recitation of the elements of each Count without pleading any facts in support of these alleged causes of action." The Defendants argue that Davis fails to sufficiently plead facts in support of her claims under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.* Title VII makes it illegal for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Furthermore, Title VII makes is unlawful "for an employer to discriminate against any of

his employees or applicants for employment. . .because he has opposed any practice made

an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). This latter form

of discrimination is typically referred to as "retaliation." *See Tomanovich v. City of*

*Indianapolis*, 456 F.3d 656, 662 (7th Cir. 2006). "The language of Title VII makes plain the

purpose of Congress to assure equality of employment opportunities and to eliminate those

discriminatory practices and devices which have fostered racially stratified job

environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 799 (1973) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 429 (1971); *Castro v.*

*Beecher*, 459 F.2d 725 (1st Cir. 1972); *Chance v. Board of Examiners*, 458 F.2d 1167 (2d Cir.

1972); *Quarles v. Philip Morris, Inc.*, 279 F. Supp. 505 (E.D. Va. 1968)). Employers, including

governmental employers, are liable for the illegal acts of their employees in violation of

Title VII under the doctrine of *respondeat superior*. *See Darchak v. City of Chicago Bd. of Educ.*,

580 F.3d 622, 630 (7th Cir. 2009) (citing *Mateu-Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d

618, 623-624 (7th Cir. 2002)) ("Unlike § 1983, Title VII allows plaintiffs to use the doctrine

of *respondeat superior* to hold a municipal agency vicariously liable for the actions of its

employees.").

Post *Twombly* and *Iqbal*, there are no heightened or fact-pleading requirements for

a cause of action alleging adverse employment discrimination under Title VII. *See Tamayo*

*v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2007). For Title VII claims to survive a motion

to dismiss there are "two easy clear hurdles. . . : First, the complaint must describe the

claim in sufficient detail to give the defendant fair notice of what the claim is and the

grounds upon which it rests. Second, the allegations must plausibly suggest that the

plaintiff has a right to relief, raising the possibility above the speculative level." *Id.*

(quoting *Equal Employment Opportunity Commission v. Concentra Health Services*, 496 F.3d

773, 776 (7th Cir. 2007)) (internal citations and quotations omitted). In *Tamayo*, the Seventh

Circuit stated that *Concentra* reaffirmed the minimal pleading standards for claims of

simple race or sex discrimination. *See Tamayo*, 526 F.3d at 1084. For a plaintiff alleging

illegal discrimination on the basis of race and sex, there is little further information that is

both easy to provide in the complaint and of clear critical importance to the claim. *See Id.*

(quoting *Concentra*, 496 F.3d at 781-782). Therefore, in order to avoid dismissal under Rule

12(b)(6), a plaintiff alleging race or sex discrimination needs only to aver that her employer

instituted a specific adverse employment action against her on the basis of race and sex.

*See Tamayo*, 526 F.3d at 1084. "[A] plaintiff alleging employment discrimination under Title

VII may allege these claims quite generally." *Id.* at 1081 (citing *Kolupa v. Roselle Park Dist.*,

438 F.3d 713, 714 (7th Cir. 2006) ("[A]ll a complaint in federal court need do to state a claim

for relief is recite that the employer has caused some concrete injury by holding the

worker's religion against him."); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say.")).

Construing the pleadings in favor of Davis, as the Court is required to do at this stage of the proceedings, it is clear that her Complaint gives the Defendants fair notice of the claims alleged against them and is sufficiently plausible to give rise to an entitlement to relief under Title VII. Davis alleges that she is female and Black, and that she was at all times performing her job satisfactorily. She alleges that the Defendants discriminated and retaliated against her after she failed to identify only Black employees for termination in the RIF. She states that it is her belief that she was discriminated and retaliated against because of her refusal to engage in illegal race-based discrimination. She further alleges that she was subjected to adverse employment action on account of her race and sex, and she gives examples of specific adverse employment actions taken by the Defendants. She also alleges that similarly situated employees outside of the protected classes to which she belongs were not treated to the same adverse employment actions. Finally, she alleges that she filed internal grievances regarding the discrimination and retaliation that she believed she was being subjected to, as well as a Charge of Discrimination with the EEOC. This is certainly sufficient to put the Defendants on notice of the claims of discrimination and retaliation that Davis now alleges against them. As the court in *Tamayo* observed, it is difficult to see what additional facts Davis would have to allege, short of pleading

evidence, to sustain her claims that she was discriminated and retaliated against on the basis of her race and sex in violation of Title VII. *See Tamayo*, 526 F.3d at 1085. Therefore, Davis's claims of employment discrimination and retaliation under Title VII are sufficiently pleaded to give rise to a plausible entitlement to relief.

### B. The Illinois Human Rights Act Claims

The Defendants also contend that Davis's claims arising under the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, should be dismissed because "Davis has not established a prima facie case of retaliation or harassment based on race or sex discrimination." The Illinois Human Rights Act prohibits "unlawful discrimination," which the courts of Illinois have held to mean discrimination against a person on the basis of their race, color, religion, national origin, ancestry, age, sex, marital status, or handicap, among other things. *See* 775 ILCS 5/1-102; *accord Owens v. Department of Human Rights*, 936 N.E.2d 623, 637 (Ill. App. Ct. 2010). Specifically, the Act makes it a civil rights violation "[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination." 755 ILCS 5/2-102(A). The Act also makes retaliation a civil rights violation. *See* 755 ILCS 5/6-101(A); *accord Owens*, 936 N.E.2d at 638. In particular, the Act states that it is a civil rights violation to "[r]etaliate against a person because he or she has opposed that which he or she

reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in higher education, discrimination based on citizenship status in employment, or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." 755 ILCS 5/6-101(A). The Illinois Supreme Court has held that in evaluating claims of discrimination and retaliation brought under the Act, courts should apply the test employed by federal courts in evaluating causes of action brought pursuant to Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* *See Zaderake v. Illinois Human Rights Comm'n*, 545 N.E.2d 684 (Ill. 1989).

At this stage of the proceedings, to establish a claim under the Illinois Human Rights Act Davis does not have to establish a prima facie case of discrimination or retaliation. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (to state a cause of action under Title VII a plaintiff does not need to establish a prima facie case of discrimination or retaliation under the *McDonnell Douglass* framework; all the plaintiff must do is state a short and plain statement of the claim showing that the pleader is entitled to relief because a Title VII complaint need not contain greater particularity). Rather, all Davis must do is aver that she suffered adverse employment actions on the basis of her race or sex. *See Tamayo*, 526 F.3d at 1084 (citing *Concentra*, 496 F.3d at 781-782). Davis's Complaint adequately alleges adverse employment actions on the basis of race and sex, going well beyond the level of

specificity required under federal notice pleading standards and including many factual examples of adverse employment actions. The Defendants incorrectly argue that Davis must offer "indirect or direct evidence" to support her claims of retaliation or discrimination. That is not the proper legal standard at the motion to dismiss stage.

There is, however, a procedural defect in Davis's allegations under the Illinois Human Rights Act. Under Illinois law, the comprehensive statutory scheme of the Act, which provides for administrative review and a system of remedies, is the exclusive means of redress for enforcing alleged violations of the Act. *See Mein v. Masonite Corp.*, 485 N.E.2d 312, 315 (Ill. 1985). Courts do not have statutory authority to hear cases for alleged violations of the Act. *See Id*. Only final orders issued by the Illinois Human Rights Commission are subject to appellate review, and this is the limited extent to which the judiciary participates in enforcement of the Act. *See Flaherty v. Gas Research Inst.*, 31 F.3d 451, 458 (7th Cir.1994) (citing 775 ILCS 5/8–111(A)(1); *Mein*, 485 N.E.2d at 314-315*)*. Davis does not allege that she exhausted her state administrative remedies under the Act and received a final order from the Commission. She does allege that she filed a Charge of Discrimination with the EEOC and received a Right to Sue Letter. The EEOC and the Illinois Human Rights Commission have a workshare agreement. The Act provides that "[w]ithin 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the [IDHR] by an aggrieved

party." 775 ILCS 5/7A-102(A)(1). The Act further provides that "[a] charge filed with the [EEOC] within 180 days after the date of the alleged civil rights violation shall be deemed filed with the [IDHR] on the date filed with the [EEOC]." 775 ILCS 5/7A-102(A-1). Notwithstanding this workshare agreement, a right to sue letter from the EEOC cannot be used as a substitute for a final order from the Commission. *See, e.g., Jimenez v. Thompson Steel Co., Inc.*, 264 F. Supp. 2d 693, 695 (N.D. Ill. 2003) (citing *Ellman v. Woodstock # 200 Sch. Dist.*, No. 99 C 50017, 2001 WL 218958, *7 (N.D. Ill. Feb. 26, 2001)). Absent a final order from the Commission, which Davis fails to allege she received, this Court has no jurisdiction to hear a cause of action arising under the Illinois Human Rights Act. Therefore Counts VII, VIII and IX must be dismissed.

### C. Section 1981 and 1983 Claims

The Defendants argue that Counts IV through VI alleging violations of 42 U.S.C. § 1981 and § 1983 should be dismissed because Daivs fails to allege that defendants acted under color of law. Davis alleges that the Defendants engaged in intentional, wilful, and deliberate conduct with reckless disregard of Davis's rights under § 1981 (race) and the Equal Protection Clause (race and sex). Davis alleges that through their actions, and acting under color of law, the Defendants took adverse employment action against her based upon her race in violation of § 1981 and based upon her race and sex in violation of the Equal Protection Clause. Davis's claims for sex discrimination arise under the protections

of the Fourteenth Amendment, and to state a claim for sex discrimination under the Equal

Protection Clause Davis must allege that the Defendants violated § 1983.  Her claims for

adverse employment action on the basis of race are brought under § 1981 pursuant to the

"and laws" provision of § 1983.  Davis cannot maintain a cause of action against the

Defendants directly under § 1981 because a federal claim for a violation of the rights

secured by § 1981 must be brought under § 1983 when the action is against a governmental

entity.  *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 732-733 (1989) (the express "at

law" provision of § 1983 provides the exclusive federal damages remedy for the violation

of rights guaranteed by § 1981 where the alleged violation is by a state actor).

The Complaint does not set forth whether Davis brings her claims against Ponce and

Rosebrock in their official capacities or in their individual capacities.  When a complaint

does not make clear whether the claims are brought against the defendants in their

individual capacities, the Court construes the complaint as only alleging that the cause of

action is brought against the defendants in their official capacities.  *See Guzman v. Sheahan*,

495 F.3d 852, 860 (7th Cir. 2007) (a complaint that does not make clear that it is brought in

an individual capacity will be construed as having been brought only in an official

capacity); *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990) (citing *Meadows v. Indiana*, 854

F.2d 1068, 1069 (7th Cir. 1988); *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985))

("an allegation that the defendants were acting under color of law generally is construed

as a suit against the defendants in their official capacities only.").

Suits against municipal employees acting under color of law brought against them in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978)); *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011). Where a plaintiff brings suit against a governmental entity, any claims against employees of that entity brought against them in their official capacities are redundant and subject to dismissal. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Schmidling v. City of Chicago,* 1 F.3d 494, 495 n. 1 (7th Cir. 1993) (upholding dismissal of the Mayor of Chicago in his official capacity as redundant where the complaint sought redress against the City itself); *see e.g., Levin v. Madigan*, 687 F. Supp. 2d 958, 973-974 (N.D. Ill. 2010) (citing *Kielbasa v. Ill. E.P.A.*, No. 02 C 4233, 2003 WL 880995, *3 (N.D. Ill. Mar. 2, 2003) (dismissing claims against the agency's director in her official capacity as redundant to claims against the agency); *Berry v. Ill. Dep't of Human Servs.*, No. 00 C 5538, 2001 WL 111035, *8 (N.D. Ill. Feb. 2, 2001) (since state agency is a defendant, claims against state officials in their official capacities were redundant and therefore dismissed)). Davis's claims against Ponce and Rosebrock are brought against them only in their official capacities as agents of the MPEA because she does not state the capacity in which she is suing them in her Complaint and because she alleges that they

acted under color of law. Thus, the claims against Ponce and Rosebrock are truly claims against the MPEA itself. Because Davis brings suit directly against the MPEA for violations of § 1981 and § 1983, the claims against Ponce and Rosebrock contained in Counts IV, V, and VI are dismissed as redundant.

Davis alleges that the Defendants violated 42 U.S.C. § 1981 by taking adverse employment actions against her in retaliation for her refusal to participate in allegedly unlawful race discrimination. She further alleges that the Defendants violated § 1981 by taking adverse employment actions against her on the basis of her race and sex, and created a hostile work environment in violation of § 1981. Because the Defendant here is a governmental entity, a cause of action to vindicate the rights secured by § 1981 must be brought pursuant to § 1983. *See Jett*, 491 U.S. at 732-733 (where a state actor or entity is allegedly responsible for the violation of rights secured by § 1981, the plaintiff must bring her cause of action under the "and laws" provision of § 1983). To state a cause of action under § 1983, a plaintiff must allege that the defendants deprived her of a right secured by the Constitution or the laws of the United States, and that the defendants acted under color of state law. *See Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000)). There is no *respondeat superior* liability against a governmental entity under § 1981 or § 1983. *See Jett*, 491 U.S. at 732-733 (municipalities may not be held liable for their employees' violations of § 1981 under the doctrine of

*respondeat superior*); *Monell*, 436 U.S. at 691 (there is no *respondeat superior* liability under the Civil Rights Act of 1871, 42 U.S.C. § 1983; thus a municipality may not be held liable for its employees' violations of a plaintiff's constitutional rights); *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir. 1995) ("local governmental bodies could not be held liable under 42 U.S.C. § 1983 simply because they employed the tortfeasor acting within the scope of his or her employment.") (quoting *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993)) (internal quotations omitted).

Where the employer is a governmental entity, the plaintiff must allege that the violation of § 1983 occurred pursuant to an official governmental policy or custom. *See Jett*, 491 U.S. at 735-736 (to state a claim under § 1983, a plaintiff must establish that the state actor's constitutional tort "was caused by a custom or policy" of the governmental entity); *St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[local] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"); *Pembaur v. Cincinnati*, 475 U.S. 469, 478-480 (1986) ("recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered"); *Monell*, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). The governmental entity's policy must be the "direct cause" or "moving force" behind the

alleged constitutional violation for liability to be imposed under *Monell*. *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 820 (1985); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 691. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

There are three ways a plaintiff may prove that a governmental entity's policy caused a violation of her constitutional rights. A governmental entity may be liable for damages under § 1983 if the alleged constitutional violations were caused by: (1) an official policy adopted and promulgated by the entity's officers; (2) a governmental practice or custom that, though not officially authorized by law or express policy, is widespread and well settled so as to constitute a custom or usage with the force of law; or (3) an act by an official with final policymaking authority where that act is in conformity with, or in the creation of, governmental policy or rules that essentially have the force of law. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 690; *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009)); *see also Gernetzke v. Kenosha Sch. Dist. No. 1*, 274 F.3d 464, 469-470 (7th Cir. 2001). To survive the Defendants' Motion to Dismiss, Davis must allege that the harm caused by the Defendants resulted from an official policy, custom, or practice of the MPEA. *See Monell*, 436 U.S. at 649.

Here, Davis only alleges in conclusory statements contained within each of her Claims for Relief that the Defendants "acted under color of law."  She does not allege that the violations of her rights were the result of the MPEA's policy.  The Complaint does not contain any allegations of an official policy promulgated by the MPEA's officers, a practice or custom that was widespread and well-settled so as to ripen into a custom with the force of law, or that an official with final policymaking authority caused the alleged harm in furtherance of the governmental entity's policy.  The Complaint does not explicitly or implicitly reference an official policy, and it does not contain any allegations of a causal link between the MPEA's acts and the MPEA's policies or practices.  "Only those individuals with the requisite policymaking authority are capable of establishing 'official policy' as required by *Monell*."  *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Chortek v. City of Milwaukee*, 356 F.3d 740, 748-749 (7th Cir. 2004)).  Davis does not plead any facts to establish that Ponce or Rosebrock had policymaking authority sufficient to bind the MPEA in this case.  *See Lewis*, 496 F.3d at 656 (lack of evidence that an official had policymaking authority to bind the governmental entity fails to demonstrate that the official can create liability for the governmental entity for an express custom or policy under *Monell*).

Likewise, Davis does not plead any facts to support a conclusion that a constitutional deprivation occurred as a result of a custom or policy of the MPEA that is

so widespread or pervasive so as to give rise to a policy with the force of law. "The word 'custom' generally implies a habitual practice or a course of action that characteristically is repeated under like circumstances." *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986). Furthermore, *Monell* requires that there be an "affirmative link" between the custom at issue and the alleged constitutional violation. *See City of Oklahoma*, 471 U.S. at 820. Here, Davis has alleged no facts to demonstrate that the MPEA had a widespread custom of discrimination and retaliation. All of the allegations in the Complaint pertain exclusively to Davis, and she does not allege that the Defendants acted on a discriminatory basis towards any other employees. She alleges that Rosebrock bemoaned "strong-willed women," but she does not show that this constituted a custom with the force of law or was an affirmative link in the alleged denial of her constitutional rights.

Finally, the Complaint does not allege whether Ponce or Rosebrock were officials with final policymaking authority. Officials with final decisionmaking authority are considered policymakers for the purposes of *Monell*, and state law governs the scope of that authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see also Valentino*, 575 F.3d at 676. "Helpful in determining whether an official is a final decisionmaker is an inquiry into: (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the

realm of the official's grant of authority." *Valentino*, 575 F.3d at 676 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995)). Both Ponce and Rosebrock are subordinate officers of superiors at the MPEA. They are constrained by the policies of their superior officers, the Board of the MPEA, which operates with a degree of legislative power, and the chief executive of the MPEA. The Metropolitan Pier and Exposition Authority Act, 70 ILCS 210/1 *et seq.*, states that "[t]he governing and administrative body of the Authority shall be a board known as the Metropolitan Pier and Exposition Board." 70 ILCS 210/14. Furthermore, the Act provides that there shall be one chief executive officer of the MPEA who "shall be responsible for the management of the properties, business and employees of the authority, shall direct the enforcement of all ordinances, resolutions, rules and regulations of the Board, and shall perform such other duties as may be prescribed from time to time by the Board." 70 ILCS 210/22(a). It additionally provides that "[t]he Board may appoint other officers who are subject to the general control of the Board and who are subordinate to the chief executive officer. The Board shall provide for the appointment of such other officers, attorneys, engineers, consultants, agents and employees as may be necessary. It shall define their duties and require bonds of such of them as the Board may designate." 70 ILCS 210/22(b). The pleadings affirmative show that Ponce and Rosebrock are neither members of the Board nor the chief executive officer of the MPEA. Construing the Complaint in the light most favorable to Davis, it appears that Ponce and Rosebrock are

mere employees of the MPEA as provided for by 70 ILCS 210/22(b).  As such, their duties are defined by the Board or the chief executive, and they are subject to review and control by those officers and subordinate to them.  Indeed, Ponce is a direct employee of the chief executive, and is therefore subject to his control and meaningful review.  Pursuant to Illinois law, the acts of employees such as Ponce and Rosebrock are subject to meaningful review by the Board, the chief executive officer, or other agents of the MPEA.  Davis pleads no facts to support the proposition that Ponce and Rosebrock's acts are not subject to meaningful review.  Indeed, just the opposite seems to be true.

Davis alleges that after she filed her grievance with the MPEA it immediately undertook an independent investigation of the acts she complained of.  Davis has not supplied any facts in her Complaint from which the Court can find that Ponce or Rosebrock were officials with final policymaking authority of the MPEA.  Indeed, Davis alleges that Ponce met with the chief executive officer before demoting her, suggesting that it was beyond the scope of his authority to demote her.  Davis does not allege that the chief executive officer was in any way involved in the retaliatory action or the adverse discrimination.  She does not allege that the chief executive officer knew about her refusal to terminate only Black employees in the RIF, or that he was aware of the race and sex based discrimination that Davis alleges Ponce and Rosebrock took against her.  Nor does the Complaint allege the necessary element to a policymaker claim:  that the act by the

policymaker represents or implements the policy of the governmental entity. *See Auriemma*, 957 F.2d at 399-401 ("Liability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy."). The Complaint does not allege that policymakers at the MPEA knew about Ponce or Rosebrock's allegedly illegal conduct or that the conduct was so widespread and persistent that MPEA policymakers should have know about it. Davis has failed to adequately allege facts sufficient to support an entitlement to relief under § 1981 and § 1983 because she does not allege that the unconstitutional acts were taken pursuant to MPEA policy or custom. The complaint is simply and completely bereft of facts to support a claim for governmental liability under *Monell*. Therefore, the Defendants' Motion to Dismiss Counts IV, V, and VI must be granted.

### D. Family and Medical Leave Act Claims

Davis has sufficiently pleaded facts to support an entitlement to relief on her claim of interference with her FMLA rights under 29 U.S.C. § 2614(a)(1). In order to succeed on an FMLA interference claim, the plaintiff must only show that her employer denied her an FMLA entitlement. *See Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). No showing or finding of "ill intent" is required. *See Id.* (citing *Hoge v. Honda Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)). "To establish such a claim, an employee must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3)

she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 993 (7th Cir. 2010) (citing *Burnett*, 472 F.3d at 477). The failure to reinstate an employee because of their decision to exercise their right to take FMLA leave time can constitute the denial of an FMLA benefit for the purposes of an interference claim. *See Goezler*, 604 F.3d at 993.

Here, Davis alleges that she was an eligible employee for the purposes of the FMLA. Furthermore, the pleadings demonstrate that she was employed with the MPEA far in excess of the 12 months of continuous employment required by 29 U.S.C. § 2611(2)(A)(i). The Defendants argue that Davis fails to "allege the requisite facts to establish a period of incapacity of more than three (3) consecutive days plus treatment from a healthcare provider." But Davis's Complaint alleges that she suffered a miscarriage, needed medical treatment, including surgery, and remained on FMLA leave for more than three consecutive days. Davis alleges that she had a serious health condition entitling her to FMLA leave, and that the MPEA was on notice of her serious medical condition and her entitlement and intent to take FMLA leave. She further alleges that the MPEA failed and refused to restore her to her job duties after her return from FMLA leave in violation of 29 U.S.C. § 2614(a)(1). Davis cites specific examples of how her job duties were diminished after her return from taking FMLA leave. Thus, Davis has pleaded sufficient facts in

support of her FMLA interference claim to survive the Motion to Dismiss.

### E. Electronic Communications Privacy Act Claims and the Illinois Eavesdropping Act Claims

The Defendants also move to dismiss Davis's claims under the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511 *et seq.* and the Illinois Eavesdropping Act, 720 ILCS 5/14-2 *et seq.* Title I of the ECPA imposes liability upon anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). A plaintiff may establish liability under the Act by showing that the defendant (1) intentionally intercepted or endeavored to intercept any wire, oral, or electronic communication; (2) intentionally used or endeavored to use any electronic, mechanical, or other device to intercept any oral communication; (3) intentionally disclosed or endeavored to disclose to any other person the contents of any wire, oral, or electronic communication with knowledge or reason to know that the information was obtained through interception; or (4) intentionally used or attempted to use the contents of any wire, oral, or electronic communication with knowledge or reason to know that the information was obtained through interception. *See* 18 U.S.C. § 2511. Section 2520 creates a private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Act. *See* 18 U.S.C. § 2520.

To establish a claim under the Illinois Eavesdropping Act, a plaintiff must show that the defendant (1) "knowingly and intentionally use[d] an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercept[ed], retain[ed], or transcribe[d] electronic communication"; (2) manufactured, assembled, distributed, or possessed an electronic, mechanical, eavesdropping, or other device with knowledge or reason to know the device was primarily used for eavesdropping; or (3) used or divulged any information which he knew or reasonably should have known was obtained through the use of an eavesdropping device. *See* 720 ILCS 5/14-2.

Davis alleges that the MPEA installed an audio and video recording device in the ceiling of her office and used it to record, among other things, statements that she made over he private cellular telephone. Davis further alleges that Rosebrock informed her that some unnamed employee had been recorded through a secret camera in the ceiling. Davis also alleges that the MPEA intentionally disclosed or endeavored to disclose the contents of her oral communication knowing or having reason to know that the information was obtained through the interception of an oral communication in violation of 18 U.S.C. § 2511 *et seq*.

Defendants contend that Davis has not presented facts sufficient to establish that the MPEA knowingly and intentionally possessed an eavesdropping device or endeavored to intercept Davis's communications. The Defendants claim that the Complaint fails to allege

that any of Davis's calls were monitored or that anyone at the MPEA actually used an eavesdropping device. In addition, the Defendants claims that Davis's Complaint fails to identify any of the relevant information that would entitle her to relief. The Defendants claim that absent from the Complaint are facts that would establish the misappropriation of electronic data or misuse of such data pursuant to 18 U.S.C. § 2511(1)(a). A motion to dismiss is used to test the sufficiency of the pleadings, not to resolve disputed issues of material facts. Davis has alleged sufficient facts to establish that the MPEA knowingly and intentionally possessed an eavesdropping device or endeavored to intercept her communications. She further alleges that the MPEA intentionally disclosed her communications in violation of the federal Act. What is alleged in the Complaint is sufficient to withstand the Defendants' motion to dismiss.

### F. Intentional Infliction of Emotional Distress

Under Illinois law, a claim for intentional infliction of emotional distress requires the plaintiff to prove that (1) the defendants' conduct was extreme and outrageous; (2) that the defendants knew there was a high likelihood that their conduct would cause severe emotional distress; and (3) that the conduct actually caused the plaintiff severe emotional distress. *See Swearnigen-El v. Cook County Sheriff's Department*, 602 F.3d 852, 864 (7th Cir. 2010). To be considered extreme and outrageous, the defendants' conduct must be "so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable

in a civilized community." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill. 1992).

"Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not amount to extreme and outrageous conduct, nor does conduct which is characterized by a degree of malice or aggravation that would entitle a plaintiff to punitive damages for another tort give rise to extreme or outrageous conduct. *See Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)). Whether conduct is extreme and outrageous is judged by an objective standard based on the peculiar facts and circumstances of a given case. *See Id.* (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). "Thus, to serve as a basis for recovery, the defendant's conduct must be such that the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Id.* (quoting *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994); Restatement (Second) of Torts § 46 cmt. d (1965)). Davis has not sufficiently plead facts to plausibly give rise to an entitlement to relief for intentional infliction of emotional distress. Davis's claim is conslusory, and states nothing more than the Defendants' conduct was extreme and outrageous. The actions complained of do not "go beyond all possible bounds of decence" and cannot be regarded "as intolerable in a civilized community." The facts that Davis has

plead do not amount to the type of conduct that is considered extreme and outrageous. In the employment context, personality conflicts and questioning of job performance are "unavoidable aspects of employment" and "frequently, they produce concern and distress." *Heying v. Simonaitis*, 466 N.E.2d 1137, 1144 (1984). "[I]f everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action." *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000) (quoting *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1115 (Ill. App. Ct. 1999). The Illinois courts have therefore limited recovery for intentional infliction of emotional distress to cases in which the employer's conduct was truly reprehensible, and have denied recovery in cases in which the plaintiff alleges that their employer subjected them to "a continuous series of intentionally discriminatory acts." *Van Stan*, 125 F.3d at 568 (citing *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251-1252 (Ill. 1990) (the employer, knowing that the plaintiff was susceptible to emotional distress, offered her money for sexual favors, fired her after she refused, and after he fired her, threatened to kill her, to rape her, and to file a legal action challenging her rights to custody of her child and attempted to disrupt her new employment relationship)); *see also Bannon v. Univ. of Chi.*, 503 F.3d 623 (7th Cir.2007) (no extreme or outrageous conduct where plaintiff's primary allegation was that her supervisor caused her emotional distress by his use of racial slurs). Davis's Complaint recites the elements of a

cause of action for intentional infliction of emotional distress without any of the necessary factual support. Thus, Davis's Complaint does not give rise to a plausible entitlement to relief because there is no factual content to allow the Court to draw the reasonable inference that the Defendants are liable for intentional infliction of emotional distress. By Davis's own admission she was able to secure a significant employment opportunity that undermines any reasonable conclusion that she is suffering from severe emotional distress. Davis's claim for intentional infliction of emotional distress is dismissed.

### ii. The Timeliness of Counts I, II, and III

The Defendants also argue that the claims contained in Counts I, II, and III of Davis's Complaint are time-barred. They point to Section 706(e) of Title VII, which provides that a charge of discrimination must be filed within 300 days after the allegedly unlawful employment practices occurred. *See* 42 U.S.C. 2000(e)(5)-(e)(1). The Defendants argue that Davis had until August 2010 to timely file a charge with the EEOC. The Defendants' argument is premised on the assumption that Davis's time for filing a charge of discrimination began to run in November 2009, when Davis was asked to identify employees for termination in the RIF and refused to do so on an unlawful basis. The Defendants have identified the wrong time from which the statute of limitations began to run. The 300-day period begins to run when the defendant engages in an adverse employment action and the plaintiff becomes aware of it, not when the plaintiff engages

in protected activity. *See Sharp v. United Airlines*, 236 F.3d 368, 373 (7th Cir. 2001) (citing

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 449-450 (7th Cir. 1990); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)).

Davis's Complaint alleges that on or around February 4, 2010, she was demoted from her position as acting senior director for unlawful retaliatory reasons. Davis's Charge of Discrimination was filed with the EEOC on September 23, 2010, within the 300-day period for filing such a claim under the statute. The Defendants' implication that the unlawful employment retaliation occurred in November 2009 contradicts Davis's Complaint, the allegations of which must be taken as true at this stage of the litigation. Therefore, Davis's claim of retaliation is not time-barred.

Similarly, Davis's claims for race and sex discrimination under Title VII are also timely. The Complaint alleges that Davis was subjected to acts of race and sex discrimination and a hostile work environment beginning in February 2010. Davis filed her Charge alleging these discriminatory acts within the 300-day period for filing such a charge. Furthermore, under Title VII, each discrete act of discrimination starts the 300-day statute of limitations running anew. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Thus, Davis's claims of race and sex discrimination are based on conduct that occurred within the 300-day period and are therefore timely. The Defendants' Motion to Dismiss Counts I, II and III of Davis's Complaint on statute of limitations grounds is

denied because Davis timely filed her EEOC Charge and thus preserved all of her Title VII claims.

### iii. Punitive Damages

The Defendants argue that Davis cannot seek or collect punitive damages against the MPEA because punitive damages are not recoverable against a public entity. The Defendants are correct in this argument. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259 (1981); *Kolar v. Sangamon County of State of Ill.*, 756 F.2d 564, 567 (7th Cir. 1985) ("As a general rule, local public entities are immune from punitive damage awards in civil rights actions."). Davis concedes this point, and asserts that she will only seek punitive damages against the individually named defendants on the claims asserted against them. Because all of the claims against the individually named Defendants have been dismissed, Davis cannot seek any punitive relief. Because Davis may not seek punitive damages against the MPEA, her prayer for punitive relief is stricken.

## IV. Conclusion

The Defendants' Motion to Dismiss is granted in part and denied in part. Davis is entitled to proceed on Counts I, II, III, X, XI and XII of her Complaint. Counts IV, V, VI, VII, VIII, IX, and XIII are dismissed. Davis's prayer for punitive damages is stricken.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 3, 2012